IN THE CIRCUIT COURT FOR

BALTIMORE CITY MARYLAND

**REGINA M. GEORGE**
8343 MINDALE CIRCLE, APT. D
WINDSOR MILL, MD 21246

      Plaintiff,

vs.

**THE MARYLAND DEPARTMENT OF
CORRECTIONAL SERVICE DIVISION
OF PRETRIAL DETENTION SERVICE,**
400 E. MADISON STREET
BALTIMORE, MD 21202

      Defendant

Case No.:  24-C-14-004379

**RECEIVED**
AUG 08 2014
Compliance, Litigation, and
Correctional Standards

## COMPLAINT

Now comes the Plaintiff, Regina George, by and through her attorneys, the Singleton Law Group, John M. Singleton, Esq. and Darryl Armstrong, Esq. and brings this action against the Maryland Department of Correctional Service Division of Pretrial Detention Service, (herein "MDCPS") and alleges violations of the MD Code State Govt. 20-606, Unlawful employment practices (Maryland Code (2013 Edition); and the Americans with Disabilities Act of 1990, 42 U.S.C. §12111 et seq. (hereinafter "ADA"); and the ADA Amendments Act of 2008 ("ADAAA") and the regulations implementing this law are contained in Title 14, Subtitle 03 of the Code of Maryland Regulations ("COMAR"). As grounds therefore, Plaintiff states as follows:

## PRELIMINARY STATEMENT

This case is about a long time MDCPS employee, Ms. Regina George, who was permanently partially disabled while on the job in 1998. Since her injury Plaintiff have been able to perform the essential functions of the job, with the help of some reasonable accommodations. Since Plaintiff's return to work, Defendant MDCPS has tried on several occasions not to honor Plaintiff reasonable accommodations request and helped foster a hostile work

- 1

1   environment whereas Plaintiff has been subjected to constant physical and mental abuse.   After years of fostering a

2   hostile work environment and forcing Plaintiff to use every administrative tool available to hold on to her reasonable

3   accommodations,  Defendant used a selective and arbitrary enforcement of a workplace rule violation as pretext to

4   retaliate against Plaintiff for complaining about a hostile work environment.  As discipline for a technical violation

5   of work place regulations, Defendants illegally removed Plaintiff's reasonable accommodation in hopes of making it

6   difficult enough on her to force a constructive termination in violation of COMAR §11.04 Disciplinary actions

7   (Code of Maryland Regulations (2013 Edition).

8

9                                                         **PARTIES**

10   1.   Plaintiff, Regina George (hereinafter referred to, as "Plaintiff" or "George") is resident of Baltimore

11        County and at all pertinent times as referenced in this Complaint, Plaintiff was an employee of The

12        Maryland Department of Correctional Service Division of Pretrial Detention Service ("MDCPS").

13   2.   MDCPS is a government agency, which employs over 10,000 employees across the state.  At all times

14        relevant to this action, the MDCPS has been an Executive Agency as defined by U.S.C. § 102 and covered

15        by Title VII, 42 U.S.C§ 2000e-16 (a).

16

17                                                       **JURISDICTION**

18   3.   This Court has subject matter jurisdiction pursuant to MD Code State Govt. 20-606 Unlawful employment

19        (Maryland Code (2013 Edition); and the Americans with Disabilities Act of 1990, 42 U.S.C. §12111 et seq.

20        (hereinafter "ADA"); and the ADA Amendments Act of 2008 ("ADAAA") and the regulations

21        implementing this law are contained in Title 14, Subtitle 03 of the Code of Maryland Regulations

22        ("COMAR").

23   4.   Venue is proper in this Court pursuant to §6-201 of the Courts and Judicial Proceedings Article, Annotated

24        Code of Maryland because Defendants carries on regular business within this judicial district.

25

- 2

5. Plaintiff filed Charges with the Maryland Commission on Civil Rights on March 27, 2013 alleging that her employer engaged unlawful acts of disability discrimination and retaliation.

6. By letter received on April 28, 2104 from the U.S. Equal Employment Opportunity Commission, Plaintiff was provided "Right to Sue" notices from the federal agency allowing Plaintiff the right to institute private civil action to enforce her rights under MD Code State Govt. 20-606 and ADA. (Attached Hereto as Exhibit "1").

## FACTS COMMON TO ALL COUNTS

7. Plaintiff has been employed by the State since February 1978.

8. Since 1989 Plaintiff has worked for Maryland Department of Correctional Service Division of Pretrial Detention Service ("MDCPS") at their Central Booking facility in Baltimore, MD.  Plaintiff is a level II Pretrial Release Investigator assigned to work the 3pm to 11pm shift.

9. Plaintiff was injured while at work on September, 19, 1998 when her ankle and foot were crushed by an elevator.

10. After the completion of extensive therapy, on September 27, 2000 Plaintiff was cleared to report to light duty work under the following accommodations:

      i.      access to the institution from the Eager Street entrance to minimize long-distance walking
     ii.     a work booth in close proximity to the bathroom
    iii.     flexible scheduling to attend physician visits
            (Attached Hereto as Exhibit "2").

11. On September 24, 2001 Commissioner Lauren A. Spekas ruled that Plaintiff:

    Has a permanent partial disability resulting in 40% loss of use of
    right foot; 35% is due to this accidental injury and 5% is due to a
    pre-existing condition; and further has an overall 15% industrial
    disability to the body due to psychiatric condition, 5% is due to
    this accidental injury, and 10% is due to a pre-existing
    condition (Attached Hereto as Exhibit "3").

1    12. Due to her disability, Plaintiff relies on MTA mobility to travel to and from work. Mobility/Para-transit is a

2        specialized, door-to-door service for people with disabilities who are unable to ride or navigate fixed-route

3        public transportation, including lift-equipped buses.

4    13. In 2001 Plaintiff requested a work station "booth 13" because it was closes to the bathroom, was a little bit

5        bigger which allowed her room to maneuver crutches and had a printer in it which allowed Plaintiff to

6        perform her job efficiently by eliminating long walks to the printer.

7    14. In 2002 Plaintiff was removed from her work station "booth 13" and was told by her then Supervisor

8        Lavonne Wells, that she need a doctor note to continue the use of the special accommodations, when

9        Plaintiff produced note in order to retain her reasonable accommodations, Ms. Wells tore it up in front of

10       Plaintiff face.

11   15. Since Plaintiff return to work in 2000, she have been subject to various work place harassment due to her

12       disability.   Plaintiff has followed all protocols in notifying her supervisors of her daily work place

13       harassment, including notifying her union representations and filing the proper grievance.  Instead of

14       investigating the complaints and making sure the work place was not a hostile environment, Defendant

15       began a pattern of retaliation against Plaintiff for complaining about the daily verbal abuse and harassment

16       that Plaintiff was force to endure.

17   16. In 2004 Plaintiff complains about harassment at work to her supervisor Delotte Ward, her printer was

18       removed, forcing Plaintiff to make long, difficult walks to the nearest printer.  When some co-workers

19       would assist Plaintiff by retrieving some of Plaintiff's documents from the printer, Management instructed

20       employees not to assist Plaintiff in retrieving her documents.

21   17. Throughout the Plaintiff employment, she have made repeated request for a locker to store her personal

22       items in.  Despite her long tenure, Plaintiff requests have been repeatedly denied even after newer

23       employees were assign lockers after Plaintiff repeated request.

24

25

18. Plaintiff work place harassment continued.  In 2006, an unknown co-worker pulled Plaintiff's chair out from under her in the break room as she was about to sit down.  While Plaintiff was injured and in pain co-workers joked that Plaintiff look like a "beached whale".  Due to this incident Plaintiff was forced to miss significant time from work.   Even though Plaintiff filled out the necessary paperwork, no one was ever disciplined for injuring Plaintiff and there is no evidence that Defendant even conducted an investigation.

19. When Plaintiff returned to work from her injury, the harassment escalated.  Mr. Paul Webb heard co-workers telling Plaintiff "Do you know what they do to lame horses?  Shoot them." and other derogatory remarks.

20. Supervisor Delette Ward states she was instructed by management to force Plaintiff to do things that were mentally difficult for her to do such as take the elevator that caused her initially injury because she needed to confront her fears.

21. In 2006 Plaintiff filed an EEOC complaint charging hostile work environment due to management's unwillingness to address the work place harassment issues that Plaintiff had repeatedly brought to their attention.

22. From 2006 to 2009 Plaintiff continued to complain about harassment on a daily basis by her co-workers. In a sworn statement, Mrs. Phyllis Watkins-Bey, a retired Central Booking Pretrial Release Investigator stated that around February 2008 when she called and asked to speak to Plaintiff, someone answered the phone and asked another co-worker "what booth is Crip in" the person responded "who" the unidentified person stated "you know Regina George" and she heard multiple co-workers laughing.

23. In 2009 Heather Allen, Plaintiff's supervisor removed Plaintiff from her work station "booth 13", when Plaintiff produced several doctors note requesting reasonable accommodations,  Ms. Allen responded by assigning Plaintiff full time to the "War Room" an isolated area of Central Booking which came with an increased work load.  Plaintiff filed a grievance with her union and filed another EEOC Complaint. It was

1    not until nine months later in or around June of 2010, when Robert Weisengoff executive director of

2    pretrial services rescinded the "War Room" placement.

3    24. In February of 2010 Plaintiff was accused in front of the entire department of peeing on the floor and at her

4    work station.  Co-workers placed disparaging notes around Plaintiff work station.  Due to the cumulative

5    effect of being bullied because of her disability and the emotional toll of the incident, Plaintiff was forced

6    to take 45 days of sick leave to deal with the physical and mental effects of the work place bullying.

7    25. In March and April of 2010 Plaintiff complained to Heather Allen, her then Supervisor that co-workers

8    continued to call her extension and say "what's up Pissy" or "Smelly".  At no time did supervisor or

9    anyone else at management make any effort to investigate or curtail the harassment.

10   26. In March 2011 Plaintiff complained to management about co-workers constantly placing papers and folders

11   on her chair, insinuating that it smelled like urine and referring to Plaintiff in derogatory terms.

12   Management responded by threatening Plaintiff reasonable accommodations, forcing Plaintiff to seek and

13   submit a doctor's letter dated March 2018, 2011 requesting continued entrance of the facility through the

14   Eager or Madison Street entrances.   On April 20, 2011, Warden Carolyn J. Scruggs approved the request

15   "until Employees medical condition is resolved.

16   27. Plaintiff has been a Pre-trial Release Investigator since 1994 and has never received any disciplinary

17   infractions until the March 5, 2013 incident.  Even though promotion was warranted by the quality of her

18   work, Plaintiff has applied and denied promotion six times since 1994.

19   28. On March 5, 2013 Plaintiff was detained and searched while trying to access the Eager Street entrance and

20   alleged to contain contraband in her possession.  The items in question where $413 in currency, a glass

21   bottle of perfume, a CD of Christian music, a Bible, approximately 100 lottery tickets and numerous posted

22   letters addressed to Plaintiff.   Although Plaintiff as well as other MDCPS employee routinely bring items

23   of this sort to work, Plaintiff was singled out and subjectively and arbitrarily punished for the rules

24   violation.

25

- 6

29. The Plaintiff was told that possession of the above stated items was contraband and as a result, Plaintiff would not be allowed to use the Eager or Madison Street entrance.  Plaintiffs believe that the search on March 5, 2013 was a pretext to retaliate against Plaintiffs for complaining about her hostile work environment and remove her reasonable accommodations.

30. On March 7, 2013, Dr. Richard Hunt wrote a letter requesting that Plaintiff be allowed to use the Eager  or Madison Street entrance due to her medical condition and the difficulty the Plaintiff have getting to the other entrance locations.  (Attached hereto as Exhibit "4")

31. On March 08, 2013 Plaintiff filed a charge with the Maryland Commission on Civil Rights alleging unlawful discriminatory employment practice in violation of Title 20 subtitle 6 of the State Government Article, Annotated code of Maryland.

32. On March 18, 2013 Plaintiff filed a grievance with the State Personnel Management System Appeal and Grievance alleging violation of the American with Disabilities act.

33. On March 18, 2013 Herbert Berry, Jr. a labor relations representative for the Maryland Correctional Law Enforcement Union requested a First Step Conference on behalf of Plaintiff based upon the ADA violation.

34.  On March 21, 2013 was notified of a Notice of Mitigation Conference schedule for March 26, 2013 and a First Step Conference scheduled for March 27, 2013

35. On March 27, 2013 Notice of Charge of Discrimination under The American with Disabilities Act was filed with the EEOC.

36. At the March 27, 2013 Employee's Mitigation Conference the violations of contraband disciplinary action was upheld for the March 5, 2013 incident.

37. On March 28, 2013, Plaintiff was informed she would be receiving a LEVEL 1 REPRIMAND for the March 5, 2013 incident.  Plaintiff alleges that this is retaliation for filing discrimination charges.

38. On April 3, 2013, Plaintiff formally requested a job location transfer to a facility that would better accommodate her medical condition.

39. On April 3, 2013 Plaintiff requested vacation leave due to the rescinding of reasonable accommodations.

40. On April 5, 2013 Plaintiff was notified by the MCCR that a Fact Finding Conference was scheduled for June 17, 2013.

41. On April 17, 2013 Dr. Richard Hunt writes letter requesting that Plaintiff be allowed to use the Eager or Madison Street entrance due to her medical condition and the difficulty the Plaintiff have getting to the other entrance locations.  (Attached hereto as Exhibit "4")

42. On April 24, 2013 Plaintiff received notification of a Department of Budgeting and Management Office of Personnel Services and Benefits, Notice of Settlement Conference schedule for May 13, 2013.

43. On May 1, 2013 Plaintiff formally requested an annual leave until the May 13, 2013 hearing was completed.

44. On June 14, 2013, Plaintiff filed another grievance with the Maryland Civil Rights Commission (MCCR) alleging the March 27,2013 reprimand was retaliation for March 8, 2013 MCCR charge.

45. On June 26, 2013 Michael S. Romeo, Operations Manager for MTA mobility services, writes a letter to Ms. Stacey Lyles, at DPSCS informing her that the designated employee entrance located at 'one north" is "inaccessible to our operators and not a safe drop off point for a Mobility vehicle. (Attached Hereto as Exhibit "5").

46. On August 27, 2013, Administrative Law Judge, Neile S. Friedman denied Plaintiff grievance that Management improperly denied her request to enter the facility via Eager or Madison Street.

47. On September 24, 2013 Plaintiff filed for Judicial Review of the August 27, 2013, Administrative Hearing Decision in Baltimore County Circuit Court 03-c-13-010849.

48. On April 28, 2014, Plaintiff received a "Right to Sue Letter" from the EEOC.

49. Plaintiff continued to use crutches and special boot for her foot and experience pain and discomfort when she travels long distances.   As of this filing, Defendant continue to refuse to reinstated Plaintiff reasonable accommodation with regard to the use of the Eager street entrance, the only one approved for drop off by MVA Mobility, forcing her to travel an unnecessarily longer route, that it rescinded as a punishment for

work place rule violation in violation of COMAR 11.04 Disciplinary actions (Code of Maryland Regulations (2013 Edition).

**COUNT 1 VIOLATION OF MD CODE STATE GOVT. § 20-606 AND VIOLATIONS OF THE AMERICANS WITH DISABILITY ACT AND THE AMERICANS WITH DISABILITIES AMENDMENT ACT 0F 2008 PROHIBITION AGAINST RETALIATION AND CREATING A HOSTILE WORK ENVIRONMENT**

50. Paragraphs one through forty-nine are hereby incorporated by reference as if fully set forth herein.

51. At all times during her employment with Defendant, Plaintiff was a qualified individual with disability within the meaning of MD Code State Govt. 20-601 Unlawful employment practices (Maryland Code (2013 Edition));

52. At all times during her employment with the Defendant, Plaintiff was capable to performing the essential functions of her job with reasonable accommodations.

53. As explained above, Plaintiff was 40% partially permanent physically disabled for RSD (Reflex Sympathetic Dystrophy) and 15% psychologically impaired due to the trauma of the injury. Plaintiff's total disability rating was found to be 65%.

54. Beginning in 1998 and continuing throughout the duration of employment with defendant, Plaintiff experienced increased pain in her legs and back particularly when walking long distance.

55. Plaintiff uses a specialized boot and crutches to walk.

56. Plaintiff's back and leg injuries significantly restricts or prevents her from engaging in major life activities, including walking, sleeping, showering, cooking, shopping for groceries, socializing, standing; all of these activities are painful and difficult for her.

57. As a preconditione of being cleared to return to work Plaintiff doctors requested reasonable accommodations such as:

- 9

i.     plaintiff is cleared to report to light duty work under the following accommodations
ii.    access to the institution from the Eager Street entrance to minimize long-distance walking
iii.   a work booth in close proximity to the bathroom
iv.    flexible scheduling to attend physician visits

58.  Since Plaintiff returned to work in 2000, she has been subject to various work place harassment due to her

disability.   Plaintiff has followed all protocols in notifying her supervisors of her daily work place

harassment, including notifying her union representatives and filing the proper grievance.  Instead of

investigating the complaints and making sure the work place was not a hostile environment, Defendant

began a pattern of retaliation against Plaintiff for complaining about the daily verbal abuse and harassment

that Plaintiff was forced to endure.

59.  Plaintiff work place harassment is continual and persuasive.  In 2006, an unknown co-worker pulled

Plaintiff's chair from under her in the break room as she was about to sit down.  While Plaintiff was injured

and in pain co-workers joked that Plaintiff look like a "beached whale".  Due to this incident Plaintiff was

forced to miss significant time at work.   Even though Plaintiff filled out the necessary paperwork, no one

was ever discipline for injuring Plaintiff and there is no evidence that Defendant even conducted an

investigation.

60.  From 2006 to 2009 Plaintiff continues to complain about harassment on a daily basis by her co-workers. In

a sworn statement, Mrs. Phyllis Watkins-Bey, a retired Central Booking Pretrial Release Investigator stated

that around February 2008 she called and asked to speak to Plaintiff, someone answered the phone and

asked another co-worker "what booth is Crip in" the person responded "who" the unidentified person stated

"you know Regina George" and she heard multiple co-workers laughing.

61.  Mr. Paul Webb hear co-workers telling Plaintiff "Do you know what they do to lame horses? Shoot them."

and other derogatory remarks.

62.  In February of 2010 Plaintiff was accused in front of the entire department of peeing on the floor and at her

work station.  Co-workers placed disparaging notes around Plaintiff work station.  Due to the cumulative

- 10

1    effect of the bullying and the emotional toll of the incident, Plaintiff is forced to take 45 days of sick leave

2    to deal with the physical and mental effects of the work place bullying.

3    63. In March and April of 2010 Plaintiff complains to Heather Allen, her then Supervisor that co-workers

4    continues to call her extension and say "what's up Pissy" or "Smelly". At no time did supervisor or

5    anyone else at management make any effort to investigate or curtail the harassment.

6    64. At no time has Defendant made any effort to curtail or reprimand any employee for verbally or physically

7    assaulting Plaintiff. When Plaintiff complained to the proper authorities, Defendant retaliated against

8    plaintiff by using the March 5, 2013 search and rule violation to deny Plaintiff reasonable accommodation.

9    Wherefore, Plaintiff demands, a declaratory judgment that Defendant discriminated against

10   Plaintiff, as alleged herein; equitable relief such as immediate stoppage of the hostile work environment

11   and $300,000 in compensatory and punitive damages as well as reasonable cost and attorney fees.

12   **COUNT II VIOLATION OF MD CODE STATE GOVT. § 20-606 AND VIOLATIONS OF THE**

13   **AMERICANS WITH DISABILITY ACT AND THE AMERICANS WITH DISABILITIES AMENDMENT**

14   **ACT 0F 2008 BY RECINDING PLAINTIFF REASONABLE ACCOMODATIONS**

15   65. Paragraphs one through forty-nine are hereby incorporated by reference as if fully set forth herein.

16   66. At all times during her employment with defendant, Plaintiff was a qualified individual with disability

17   within the meaning of MD Code State Govt. 20-601 Unlawful employment practices (Maryland Code

18   (2013 Edition));

19   67. At all times during her employment with the Defendant, Plaintiff was capable to performing the essential

20   functions of her job with reasonable accommodations.

21   68. As explained above, Plaintiff was 40% partially permanently physically disabled for RSD (Reflex

22   Sympathetic Dystrophy) and 15% psychologically impaired due to the trauma of the injury. Plaintiff total

23   disability rating was found to be 65%.

24

25

- 11

69. Beginning in 1998 and continuing throughout the duration of employment with defendant, Plaintiff experience increased pain in her legs and back particularly when walking long distance.

70. Plaintiff uses a specialized boot and crutches to walk.

71. Plaintiff's back and leg injuries significantly restricts or prevents her from engaging in major life activities, including walking, sleeping, showering, cooking, shopping for groceries, socializing, standing; all of these activities are painful and difficult for her.

72. As a preconditioned of being cleared to return to work Plaintiff doctors requested reasonable accommodations such as:

     v.    plaintiff is cleared to report to light duty work under the following accommodations
     vi.    access to the institution from the Eager Street entrance to minimize long-distance walking
     vii.   a work booth in close proximity to the bathroom
     viii.  flexible scheduling to attend physician visits

73. Although Defendant has not always accommodated Plaintiff with regard to the work booth recommendation, up until March 5, 2013 Defendant did accommodate her disabilities with regards to the Eager Street Entrance.

74. On March 6, 2013 Defendant refused Plaintiff's reasonable accommodation request to use the Eager Street entrance as for form of punishment for work place policy violation in violation of COMAR 11.04 Disciplinary actions (Code of Maryland Regulations (2013 Edition)).

75. Even after repeated requests by Plaintiff's doctor, that for medical reason Plaintiff be allowed to use the Eager Street exit, and a determination by MVA mobility service that Plaintiff's new assigned entrance is not suitable for pick up or drop off, thus forcing Plaintiff to walk longer distances at increased pain, Defendants still refuses to reinstate Plaintiff reasonable accommodations.

76. As a result of Defendants refusal to allow Plaintiff reasonable accommodations, Plaintiff is forced to use the same elevator that she was in when her foot was originally injured, this causes Plaintiff great mental anguish.

77. From November 2009 to June 2010 Defendant segregated Plaintiff in an isolated work area because of Plaintiff disability in violation of MD Code State Govt. 20-606 (A)(2)(i) Unlawful employment practices (Maryland Code (2013 Edition);

78. Defendant discriminated against Plaintiff, in violation of the of MD Code State Govt. 20-606 (A)(4) Unlawful employment practices (Maryland Code (2013 Edition), when it failed to make reasonable accommodations for her known disability.

79. By so discriminating against Plaintiff on the basis of her disabilities, defendants violated the MD Code State Govt. 20-606 (A)(4) Unlawful employment practices (Maryland Code (2013 Edition).

80. As a result of Defendant's malicious violations of the MD Code State Govt. 20-606 (A)(4) Unlawful employment practices (Maryland Code (2013 Edition), Plaintiff has suffered and is suffering injuries, including undue pain and suffering, loss of vacation and sick time and considerable mental distress.

Wherefore, Plaintiff demands a declaratory judgment that defendant discriminated against Plaintiff, as alleged herein, reinstatement of her reasonable accommodation to enter through the Eager Street entrance and use of work station "booth 13", Replenishment of loss sick and vacation time due to Defendants refusal to honor Plaintiff reasonable accommodation request, compensatory and punitive damages in the amount of $300,000, pre-judgment and post-judgment interest thereon, on the lost compensation and compensatory damages, with regards to loss sick and vacation time, reasonable attorney fees and cost under Title VII, 42 U.S.C. §12117 and such other and further relief as to the Court seems just and warranted.

**PRAYER FOR A JURY TRIAL**

Plaintiff request a jury trial on all issues of fact and damages arising herein.

Dated this 24 of July, 2014.

Respectfully submitted,

John M. Singleton
The Singleton Law Group
1447 York Road, Suite 508
Lutherville, Maryland 21093
410-902-0073
Jsingleton@singleton-law.com

Darryl R. Armstrong
The Singleton Law Group
1447 York Road, Suite 508
Lutherville, Maryland 21093
410-902-0073
Darmstrong@edrmlaw.com
Attorneys for Plaintiff

- 14