IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

REGINA GEORGE                    *
                                 *
v.                               *      Civil Action No. WMN-14-2808
                                 *
THE MARYLAND DEPARTMENT          *
OF CORRECTIONAL SERVICE          *
DIVISION OF PRETRIAL        *
DETENTION SERVICE                *
                                 *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Pending before the Court is a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendant Maryland Department of Public Safety and Correctional Services[1] (Department).  ECF No. 12.  The motion is fully briefed, the Court determines that no hearing is necessary, Local Rule 105.6, and for the reasons stated herein, the motion will be granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Regina George brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Maryland's Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-606.  Ms. George is a longtime

---

[1] This action is captioned "The Maryland Department of Correctional Service Division of Pretrial Detention Service" but the correct identification of the state agency against whom Ms. George brings this suit is the Maryland Department of Public Safety and Correctional Services and the Court will refer to it as such.

employee of the State, having worked for the Department since
1989, and currently serves as a Pretrial Investigator at Central
Booking in Baltimore, Maryland.  In 1998, her foot and ankle were
injured by the elevator at the Central Booking facility.  As a
result of her injury, she still uses crutches and an ankle boot
to walk and relies on Maryland Department of Transportation's
paratransit services (MTA Mobility) for local travel.  Upon her
return to work in 2000, Ms. George alleges that she suffered
harassment because of her injured foot, retaliation when she
complained of the harassment, and a revocation of the
accommodations the Department made so that she could continue in
her work.

Plaintiff's allegations of a hostile work environment stem
from incidents between approximately 2002 and 2011.  Ms. George
first alleges that, when she returned to work, she was assigned
"Booth 13" so that she could easily access the restroom and a
printer, but this assignment was subsequently taken away along
with printer access.[2]  In 2006, a co-worker pulled her chair out
from under her and as she lay on the ground, called her a
"beached whale."  In the same year, a co-worker related to her
that he overheard the statement, apparently in reference to her
injury, "Do you know what they do to lame horses?  Shoot them."

---

[2] Plaintiff's complaint is inconsistent as to when she was
removed from Booth 13, stating that she was removed both in 2002
and 2009.  See ECF No. 2 ¶¶ 14 and 23.

In 2008, another co-worker overheard her being referred to as "crip" (presumably short for "cripple").  Then, in 2010, she was accused of accidentally urinating at her desk by co-workers and was subsequently mocked as "pissy" and "smelly."  The teasing related to this incident continued through 2011.  Plaintiff does not detail any incidents past 2011.

Plaintiff states that she promptly complained of this harassment by co-workers to her union and "filed the proper grievances."  She also filed complaints with the Equal Employment Opportunity Commission (EEOC) in 2006 and 2009.  She alleges that the complaints she made to her supervisors and union were not investigated and that she was in fact retaliated against for making those complaints.  She pinpoints an incident on March 5, 2013, as the main retaliatory action taken against her.  On March 5, Plaintiff was stopped and searched by a security guard when she attempted to enter Central Booking by an entrance on Eager Street.  The search revealed that she had on her person $413.00 in cash secured in her bra, a glass bottle of perfume, a CD, a Bible, approximately 100 lottery tickets, and multiple letters addressed to Plaintiff.  As a result of her attempt to carry these objects into Central Booking, Plaintiff was assessed a Level I Reprimand for a violation of a Department directive. Plaintiff appealed this reprimand, but the decision by the Department was affirmed by an Administrative Law Judge.

3

Plaintiff was at the Eager Street entrance on March 5th because from 2000 to 2013,[3] she had used this side entrance to Central Booking as her MTA Mobility drop-off point.  The main access point to Central Booking is the North Sally Port, through which all Department employees must pass in order to go through a security clearance.  After Plaintiff was found with the aforementioned contraband on her person, Warden Carolyn Scruggs determined that Ms. George should be restricted to using the North Sally Port in order to go through standard security checks. In the immediate aftermath of March 5th, Ms. George submitted two doctor's notes and a note from the Operations Manager of MTA Mobility that the "one north" entrance was inaccessible to MTA's operators.  Ms. George also appealed Ms. Scruggs' decision to restrict access to the North Sally Port, but the appeal was denied.

## II.  LEGAL STANDARD

The Department has filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.  Usually, in evaluating a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true

---

[3] Plaintiff's complaint includes use of the Eager Street entrance as one of the original conditions of her return to work, ECF No. 2 ¶ 57, but the first known documentation of this request is in 2011, when Plaintiff provided a doctor's note and received formal approval from Warden Scruggs.  Id. ¶ 26.  Plaintiff has asserted, and Defendant has not disputed, that her use of the Eager Street entrance was continuous before the March 5, 2013 incident.

all well-pled allegations of the complaint and construe the facts
and reasonable inferences derived therefrom in the light most
favorable to the plaintiff.  See Ibarra v. United States, 120
F.3d 472, 474 (4th Cir. 1997).  A court considers only the
pleadings when deciding a motion to dismiss.  If matters outside
the pleadings are presented and not excluded, the motion must be
considered under the summary judgment standard of Rule 56.  See
Villeda v. Prince George's Cnty., 219 F. Supp. 2d 696, 698 (D.
Md. 2002).  In this case, the parties have submitted matters
outside the pleadings, and the Court has considered these matters
with respect to Plaintiff's FEPA claim for failure to
accommodate.  Defendant's motion shall be considered a motion for
summary judgment and decided accordingly on this issue, but will
be considered under the 12(b)(6) standard as to all other
matters.

Summary judgment is appropriate if the record before the
court "shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986).  See also Felty v. Graves-Humphreys Co., 818 F.2d
1126, 1128 (4th Cir. 1987) (noting that trial judges have "an
affirmative obligation . . . to prevent factually unsupported
claims and defenses from proceeding to trial" (internal quotation
marks omitted)).  A fact is material if it might "affect the

outcome of the suit under the governing law." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining
whether there is a genuine issue of material fact, the Court
"views all facts, and all reasonable inferences to be drawn from
them, in the light most favorable to the non-moving party."
Housley v. Holquist, 879 F. Supp. 2d 472, 479 (D. Md. 2011)
(citing Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286
(4th Cir. 1987)).

### III. **ANALYSIS**

In her complaint, Plaintiff brings this action broadly as
"Violations of the Americans with Disability Act and Americans
with Disabilities Amendment Act of 2008."  See ECF No. 2 at 9 and
11.  More specifically, Plaintiff's complaint relates to Title I
of the ADA, which prohibits an employer from "discriminat[ing]
against a qualified individual on the basis of disability in
regard to job application procedures, the hiring, advancement, or
discharge of employees, employee compensation, job training, and
other terms, conditions, and privileges of employment."  42
U.S.C. § 12112(a).[4]  The Supreme Court, in Board of Trustees of

---

[4] Plaintiff, in her opposition, points to Title II of the ADA as
the source of her action, although she also concedes that this
suit is about "discrimination in employment."  ECF No. 17 at 8.
As "Title II of the ADA does not cover disability-based
employment discrimination," Brumfield v. City of Chicago, 735
F.3d 619, 630 (7th Cir. 2013), and Plaintiff employs reasoning
rejected in Garrett, the Court declines to adopt Plaintiff's

the University of Alabama v. Garrett, 531 U.S. 356, 360 (2001),
held that the Eleventh Amendment bars suits in federal court by
state employees to recover money damages "by reason of the
State's failure to comply with Title I of the ADA."
Specifically, the Court found that Congress failed to document a
history and pattern of the states' irrational employment
discrimination practices against the disabled.  Id. at 368.  The
Department is an agency of the State.  Md. Code Ann., Corr.
Servs. § 2-101.  In her prayer for relief, Plaintiff requests
"compensatory and punitive damages in the amount of $300,000,
pre-judgment and post-judgment interest . . . [and] reasonable
attorney fees and cost."  ECF No. 2 at 13.  Plaintiff has brought
precisely the type of suit that was addressed by the Court in
Garrett and found to be prohibited by the Eleventh Amendment.  As
such, all of Ms. George's claims under the ADA must be dismissed.

Plaintiff also brings this action as "Violation[s] of Md.
Code State Gov't § 20-606."  See ECF No. 2 at 9 and 11.
Defendant argues that much of the complaint falls outside the
statute of limitations, as FEPA requires that a "civil action is
filed within 2 years after the alleged unlawful employment
practice occurred."  ECF No. 12-1 at 12 (quoting Md. Code Ann.,
State Gov't § 20-1013(a)(3)).  Defendant also argues that, in

_____

casting of her claims as falling under Title II or otherwise
exempt from Eleventh Amendment immunity.

particular, Plaintiff's hostile work environment claim is completely barred by the statute of limitations as she cannot cite to an incident within the statute of limitations to make the continuing violation doctrine available.  Id.  Plaintiff fails to address this deficiency, especially in relation to her hostile work environment claim, in which all incidents are alleged to have occurred before 2011.  Plaintiff initiated this action in the Circuit Court of Maryland for Baltimore City on July 24, 2014.  Accordingly, all incidents and allegations occurring prior to July 24, 2012, must be dismissed, including Count I of Ms. George's FEPA claim as it relates to a hostile work environment.

When the two year statute of limitations is taken into account, only the retaliation and failure to accommodate claims arising from the March 5, 2013, incident remain.  These claims, however, do not stand up under further scrutiny in light of the timing of the incident, the clearly established regulations at Central Booking, the Department's interest in institutional security, and the sheer quantity of contraband on Ms. George's person.

First, Ms. George has failed to adequately plead a claim for retaliation.  To establish a claim of retaliation, Plaintiff "must show that she engaged in protected activity, that Defendant took adverse action against her, and that a causal relationship existed between the protected activity and the adverse employment

activity." Crockett v. SRA Int'l, 943 F. Supp. 2d 565, 574 (D. Md. 2013). It is not disputed that Plaintiff engaged in protected activity when she complained about her work environment to her superiors, union, and EEOC between 2002 and 2011. Nor is it disputed that the Level I Reprimand was an adverse action taken by the Department. The Department, however, argues that the two years between the end of the protected activity time period and the alleged retaliatory action does not constitute sufficient temporal proximity to establish a causal connection, to which Plaintiff has offered no response. Courts have consistently held that "temporal proximity must be very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). Two years, even construed to the benefit of the Plaintiff, cannot be described as "very close." See Shields v. Federal Express Corp., 120 Fed. App'x 956, 963 (4th Cir. 2005) (per curiam) ("After the Clark decision, we concluded that a ten-week gap between protected activity and termination 'gives rise to a sufficient inference of causation' but was 'sufficiently long so as to weaken significantly the inference of causation between the two events.'") (citation omitted). Plaintiff's complaint pleads no other facts to suggest there was a causal connection between the protected activity between 2002 and 2011 and the reprimand stemming from the 2013 incident. Therefore, the Court will dismiss Count I of Ms. George's FEPA claim as it relates to

retaliation.

Finally, even assuming that using an entrance alternative to the North Sally Port constitutes a reasonable accommodation to Ms. George's disability, the Court finds that the Department is not required to allow Ms. George access to the Eager Street entrance because such accommodation constitutes an undue hardship.  The Department must make a reasonable accommodation to its employee unless such accommodation presents an "undue hardship."  See 42 U.S.C. § 12112(b)(5)(A).[5]  In determining whether an accommodation constitutes an undue hardship, the Court considers the "(1) financial cost; (2) additional administrative burden; (3) complexity of implementation; and (4) any negative impact which the accommodation may have on the operation of the employer's business, including the accommodation's effect on its workforce." Reyazuddin v. Montgomery Cnty., Md., 7 F. Supp. 3d 526, 549 (D. Md. 2014).  Essentially, the analysis is "one of balancing the benefits and the burdens of the proposed accommodation for a particular employer."  29 C.F.R. 1630.2(p). At the same time, "the ADA's reasonable accommodation standard does not require an employer to abandon a legitimate and non-discriminatory company policy."  EEOC v. Sara Lee Corp., 237 F.3d

---

[5] FEPA is the Maryland State analogue to the ADA and will accordingly assess Plaintiff's Count II violation of FEPA under the same standards.  See Goel v. Tishcon Corp., 2011 WL 836680, at *3 (D. Md. March 4, 2011).

349, 354 (4th Cir. 2001).

The Department has a legitimate, non-discriminatory policy in DPDS Directive 110.0033.05F, which prohibits staff from bringing into Central Booking currency over $20.00, reading material, and glass bottles, among other items.  Affidavit of Warden Carolyn Scruggs, ECF No. 12-2 ¶ 5.  The Department enforces this policy by requiring all staff to go through a security screening at the North Sally Port, including employees who use the services of MTA Mobility.  Id. ¶ 10.  Establishing and enforcing a uniform procedure to prevent contraband from entering Central Booking promotes the State's compelling interest in maintaining the security of its correctional facilities.  See Pell v. Procunier, 817 U.S. 817, 823 (1974) ("[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.").  While allowing one individual to use an alternative entrance may not present a significant monetary burden, as Plaintiff alludes, ECF No. 17 at 14, such an accommodation results in a disproportionately negative impact on the Department by undermining the effectiveness of its institutional security scheme.

Plaintiff argues that access to the Eager Street entrance is presumptively reasonable because the Department has accommodated this request for thirteen years and after thirteen years cannot

now argue that such accommodation is an undue hardship.

Plaintiff characterizes Defendant's argument as without "any

factual basis" and "is almost farcical."  Id.  The factual basis

for the undue hardship Eager Street access presents is found in

Plaintiff's own conduct.  Plaintiff, when found with a large

amount of cash, a glass bottle, a Bible, and other personal

effects did not, as she describes it, commit a "minor policy

violation."  Id. at 13.  She did not minimally cross the line of

an administrative policy, but violated a security regulation

meant to maintain the safety of everyone who crossed into Central

Booking.  Requiring Plaintiff to go through the same security

procedures as all other Central Booking staff is not a

"disciplinary tool," id. at 15, meant to punish Plaintiff, but

rather is an effort by the Department to maintain institutional

security.  Requiring the Department to allow an employee who is

known to violate security directives to continue to circumvent

standardized security procedures would put the Department in the

untenable position of actively undermining its institutional

security.  Therefore, the Court will grant summary judgment to

the Department on Count II of Ms. George's FEPA claim.[6]

---

[6] Plaintiff argues that there are material disputes of fact that
make summary judgment inappropriate in this case.  This argument
is irrelevant to the extent that she applies it to her hostile
work environment claim as this claim is time barred.  The
remaining purportedly disputed facts to which Plaintiff points
center on the usefulness of allowing Plaintiff to access Central

Accordingly, judgment is granted to the Department in its
entirety and this action will be terminated.

**IV.** <u>**CONCLUSION**</u>

    For the foregoing reasons, Defendant's Motion to Dismiss or,
in the Alternative, for Summary Judgment will be GRANTED.  A
separate Order will issue.


                                 _____/s/_____
                                 William M. Nickerson
                                 Senior United States District Judge

DATED:     February 25, 2015

---

Booking by way of the Eager Street entrance.  As the Court has
assumed without deciding that using the Eager Street entrance is
reasonable but for the undue hardship on the Department, it need
not address this potential dispute.